## IN THE UNITED STATES DISTRICT COURT

### WESTERN DISTRICT OF TEXAS
### PECOS DIVISION

| | | |
|---|---|---|
| **GEORGE HANSARD and STACY HANSARD,** | § | |
| *Plaintiffs*, | § | |
| | § | |
| **v.** | § | **PE: 23-CV-00041-DC-DF** |
| | § | |
| **GABRIEL ZAMORA, sued in his individual capacity only, et al.,** | § | |
| *Defendants*. | § | |

## REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE

BEFORE THE COURT is Defendants Gabriel Zamora, Billy Espino, Freddie Martinez, Anastacio Nacho Dominguez, Flo Garcia, III, Sandra Rivera, Ursula Sanchez, and Andy Rivera (collectively "Defendants") Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6). (Doc. 9). This matter is before the undersigned Magistrate Judge through a standing order of referral pursuant to 28 U.S.C. § 636 and Appendix C of the Local Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration, the Court **RECOMMENDS** Defendants' Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART**. (Doc. 9).

### I. BACKGROUND

This is a classic case of small-town politics gone awry. Plaintiffs George and Stacy Hansard (collectively "the Hansards") live in Fort Stockton, Texas. (Doc. 7 at 3). George Hansard is president of the Pecos County State Bank ("the Bank"), and Stacy Hansard, his wife, works as a special needs aide for the Fort Stockton Independent School District ("FSISD"). *Id.* at 8, 15; (Doc. 9 at 2). Defendants—FSISD Superintendent Gabriel Zamora ("Defendant Zamora") and School Board members (collectively "School Board Defendants")—allegedly launched a retaliation campaign against the Hansards because the Hansards spoke out against

1

Defendants' alleged mismanagement of the District and two bond proposals at FSISD board meetings held on June 30, 2022 and October 24, 2022. (Docs. 7 at 4–5; 12 at 2, 10).[1] The Hansards speech contributed to the first bond proposal's election defeat. (Doc. 12 at 10). The second bond proposal was set for vote on November 8, 2022. (Doc. 7 at 8).

One hour before polls closed on November 8, 2022, Defendant Zamora emailed the local judiciary, law enforcement, and Geoge Hansard's employer, the Bank.[2] (Doc. 7 at 8–9). In the email, Defendant Zamora accused George Hansard of many terrible acts, such as spousal abuse and claimed George Hansard posed a danger to the FSISD Board, the community, his family, and himself. *Id.* at 11. Defendant Zamora also insinuated the Bank should cut ties with George Hansard and announced his plan to recommend that FSISD stop using the Bank as its depository, "[d]ue to the conflict of interest and Mr. Hansard's actions." *Id.* at 12–13. The Hansards allege the email was a threat: FSISD would terminate its business relationship with the Bank if George Hansard remained employed as the Bank's president. (Doc. 12 at 3).

Months after the email was sent, Defendants allegedly acted on the threat. In May 2023, George Hansard submitted the Bank's bid to remain FSISD's depository. (Doc. 7 at 14). Despite submitting the "best bid," the FSISD Board voted to move FSISD's deposits to a bank with less favorable terms. *Id.* at 15. The FSISD Board then refused to pay a contractor over $70,000 in outstanding invoices after learning the contractor factored the invoices with the Bank. *Id.* And the alleged retaliation did not stop with George Hansard. Stacy Hansard, an FSISD employee,

---

1. Although the Hansards took issue with many FSISD actions, their opposition to the bond proposal appears to have spurred the retaliation campaign. (*See* doc. 7 at 5–8).

2. Specifically, the email was sent to: the Pecos County Judge, the Fort Stockton City Manager, the Pecos County Sheriff, the Fort Stockton Police Chief, the Pecos County D.P.S. Seargeant, and board members of the Pecos County State Bank—George Hansard's employer, and several of the Bank's major clients. *Id.* at 8–9.

alleges she received a demotion-like transfer from special needs aide to crossing guard supervisor and cafeteria worker. *Id.* at 15–16; (Doc. 12 at 7).

The Hansards filed suit in this Court on October 10, 2023. (Doc. 1). On December 13, 2023, the Hansards filed their First Amended Complaint, the active pleading. (Doc. 7). The Hansards bring First Amendment retaliation and related conspiracy claims against Defendants under 42 U.S.C. § 1983. The Hansards also bring three state-law claims for defamation, intentional inflection of emotional distress, and civil conspiracy. On December 27, 2023, Defendants moved to dismiss. (Doc. 9). The Hansards responded on January 11, 2024. (Doc. 12). Defendants then replied on January 17, 2024. (Doc. 16). The Motion to Dismiss is thus ripe.

## II. LEGAL STANDARD

### A.    Rule 12(b)(1)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges a court's subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). A case is properly dismissed under Rule 12(b)(1) "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). When ruling on a 12(b)(1) motion, a court may evaluate: "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

A case cannot proceed without subject matter jurisdiction. As a result, when a Rule 12(b)(1) motion is filed with other Rule 12(b) motions, the court should consider the Rule 12(b)(1) jurisdictional attack before considering any attack on the merits. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th

Cir. 1980) (per curiam)). Subject matter jurisdiction requires standing, and thus standing is properly challenged in a Rule 12(b)(1) motion. *Lowery v. Mills*, 690 F. Supp. 3d 692, 698 (W.D. Tex. 2023) (citing *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 350 (5th Cir. 1989)). The party asserting jurisdiction bears the burden to prove jurisdiction exists. *Ramming*, 281 F.3d at 161.

### B.    Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a 12(b)(6) motion to dismiss, plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly¸* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal is appropriate if a complaint offers merely "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013), *cert. denied*, 572 U.S. 1087 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

When reviewing a 12(b)(6) motion, the court accepts all facts as true and construes facts in a light most favorable to plaintiff. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Review is limited to the complaint and matters properly subject to judicial notice. *Lowery*, 690 F. Supp. 3d at 698 (citing *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)).

### III. DISCUSSION

At the heart of this dispute is whether Defendant Zamora and the School Board Defendants used their position and influence as FSISD board members to violate the Hansard's

First Amendment rights by pressuring the Bank—George Hansard's employer—to terminate his employment and by subjecting Stacy Hansard to a demotion-like transfer in job responsibilities. (Doc. 12 at 9). The Court finds George Hansard sufficiently alleges a First Amendment retaliation claim against Defendant Zamora. The undersigned thus **RECOMMENDS** Defendants' Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART**.

### A.    Standing

Defendants contend this Court lacks jurisdiction over the Hansards' § 1983 claims because the Hansards' lack standing. (Doc. 9 at 9–10). A plaintiff must have standing to bring suit in federal court. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992). Standing requires a plaintiff to show an injury in fact that is fairly traceable to the challenged action of defendant and likely to be redressed by plaintiff's required relief. *Lowery*, 690 F. Supp. 3d at 699. This threshold requires a party seeking federal jurisdiction to establish three elements: injury in fact, causation, and redressability. *Id.* (citing *Stringer*, 942 F.3d 715, 720 (5th Cir. 2019)). Here, Defendants contend neither George nor Stacy Hansard allege any facts to show an injury-in-fact. (Docs. 9 at 9–10; 16 at 5).

A plaintiff suffers an "injury in fact" when there is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (cleaned up). Our sister court in *Lowery v. Mills* recently explained that standing requirements "are somewhat relaxed" in First Amendment cases, and this "manifest itself most commonly in the doctrine's first element: injury in fact." *Id.* at 699–700 (quoting *Cooksey v. Futrell*, 721 F.3d 226, 235 (4th Cir. 2013)). Citing to a long history of Fifth Circuit case law, the *Lowery* Court found "[t]he Fifth Circuit has consistently reasoned that 'government action that chills protected speech without prohibiting it can give rise to a constitutionally cognizable injury.'" *Id.* (providing string cite).

Here George and Stacy Hansard allege the School Board Defendants acted to chill their speech. (*See* doc. 7 at 8–16). The Court finds at this early stage the Hansards have alleged cognizable injuries. George Hansard alleges Defendants emailed his employer, the Bank, "threaten[ing] or harry[ing]" the Bank to fire George Hansard for publicly speaking out against the School Board. *Id.* at 9. When the threats failed, Defendants allegedly "sought to put financial pressure on the Bank to terminate George Hansard's employment." (Doc. 12 at 5). Defendants then voted to sever ties with the Bank and refused to pay a contractor's invoices factored through the Bank. (Doc. 7 at 15). Defendants contend these injuries are to the Bank and the contractor, not to George Hansard. (Doc. 9 at 9).

"Courts generally refuse to recognize standing based on economic harm that is merely a consequence of an injury suffered by another party." *Duran v. City of Corpus Christi*, 240 F. App'x 639, 641 (5th Cir. 2007). That said, in the Fifth Circuit, as discussed below, "[i]t is plain that the government cannot harry the employer of an ordinary citizen who gave unwelcome testimony, seeking to have the employee fired in retaliation." *Id.* at 369. This is nearly identical to the injury George Hansard alleges. Thus, it appears to the Court that George Hansard has alleged an injury in fact.

Stacy Hansard, an FSISD employee, likewise alleges Defendants acted to chill her speech. Because she and George Hansard publicly spoke out against the school board, Stacy Hansard claims she received a demotion-like transfer in job responsibilities. (*See* docs. 7 at 15–16; 12 at 9). "This Circuit has clearly established that [] a retaliatory, demotion-like transfer may constitute an adverse employment action under 42 U.S.C. § 1983." *Burnside v. Kaelin*, 773 F.3d 624, 626 (5th Cir. 2014) (providing string cite). At this early stage it appears to the Court that Stacy Hansard has also alleged an injury in fact.

Both George and Stacy Hansard have alleged an injury in the First Amendment context. The undersigned thus recommends Defendants' Motion to Dismiss as to lack of standing be **DENIED**. (Doc. 9).

### B.    Federal Claims

The Hansards bring First Amendment retaliation claims and related conspiracy claims under 28 U.S.C. § 1983. (Doc. 7 at 16). Defendants move to dismiss all claims and raise a qualified-immunity defense. (*See* doc. 9). If qualified immunity bars the Hansards' underlying First Amendment claims, "there [is] no need to reach the issue of whether a conspiracy existed to engage in those actions." *Bevill v. Fletcher*, 26 F.4th 270, 275 (5th Cir. 2022) (quoting *Hale v. Townley*, 45 F.3d 914, 921 (5th Cir. 1995)). Thus, the Court begins its discussion with whether the School Board Defendants are entitled to qualified immunity.

### 1.    Qualified Immunity

Before proceeding, the Court addresses whether Rule 12(b)(1) or Rule 12(b)(6) governs qualified immunity. (*See* docs. 9; 12). Qualified immunity is an affirmative defense; it is not jurisdictional. *Geraci v. City of Austin*, No. 19-CV-00340, 2020 WL 1644004, at *2 (W.D. Tex. Apr. 2, 2020), *R. & R. adopted*, 2020 WL 1644004 (W.D. Tex. Apr. 2, 2020). By asserting qualified immunity, Defendants argue the Hansards failed to state a claim on which relief can be granted. *Id.*; *Bryant v. Dayton Indep. Sch. Dist.*, No. H-21-1547, 2021 WL 3555947, at *3 (S.D. Tex. Aug. 11, 2021). Such arguments are properly addressed under Rule 12(b)(6), not Rule 12(b)(1). *Geraci*, 2020 WL 1644004, at *2; *Bryant*, 2021 WL 3555947, at *3; *Lee v. Brokenberry*, No. 23-CV-01470, 2023 WL 6221781, at *2 (S.D. Tex. Sept. 25, 2023). The Court thus applies the Rule 12(b)(6) standard.

The Court now turns to whether the School Board Defendants are entitled to qualified immunity for the Hansards' § 1983 claims. Put simply, "[t]he doctrine of qualified immunity

shields government officials acting within their discretionary authority from liability when their conduct does not violate a clearly established statutory or constitutional law of which a reasonable person would have known." *Wallace v. County of Comal*, 400 F.3d 284, 289 (5th Cir. 2005). Because qualified immunity is immunity from suit, it should be determined as early as possible. *Pearson*, 555 U.S. at 231–32. Early determination demands a plaintiff survive a motion to dismiss for qualified immunity without *any* pre-dismissal discovery. *Carswell v. Camp*, 54 F.4th 307, 311 (5th Cir. 2022).

Yet qualified immunity is not a foregone conclusion. A government official is not entitled to qualified immunity if a plaintiff can prove two prongs: "(1) the official violated a statutory or constitutional right, and (2) the right was 'clearly established' at the time of the challenged conduct." *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017). The two prongs may be addressed in any order. *Pearson*, 555 U.S. at 236.

The Hansards bring their First Amendment retaliation claims together but allege different injuries. For this reason, the Court addresses the Hansards' claims separately.

**a.  George Hansard's First Amendment Retaliation Claim**
**i.    Clearly Established Right**

The Court starts with George Hansard's First Amendment retaliation claim on the clearly established prong. A right is "clearly established" when the contours of the right are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Lincoln v. Turner*, 874 F.3d 833, 847 (5th Cir. 2017) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). In other words, a government official must have "fair warning." *Terwillinger v. Reyna*, 4 F.4th 270, 284. "Fair warning" can be satisfied "despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions give reasonable warning that the conduct at issue violated constitutional rights." *Id.* at 284–85

8

(quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)). A right must be clearly established at the time of the incident and the defendant-official's conduct must be objectively unreasonable considering the clearly established law. *McMurry v. Midland Indep. Sch. Dist.*, No. MO:20-CV-00242, 2021 WL 4354615, at *8 (W.D. Tex. Sept. 3, 2021).

Defendant Zamora sent the ill-fated email on November 8, 2022.[3] Thus, George Hansard's violated right must be clearly established as of November 8, 2022. "[T]he law has long been clearly established that government officials cannot retaliate against ordinary citizens for exercising their First Amendment rights." *Round Rock Indep. Sch. Dist. v. Amy M.*, 540 F. Supp. 3d 679, 701 (W.D. Tex. 2021) (citing *R.S. ex rel. Smith v. Starksville Sch. Dist.*, No. 12-CV-00088, 2013 WL 5295685, at *8 (N.D. Miss. Sept. 19, 2013)). Even more relevant, the Fifth Circuit in *Kinney v. Weaver* "clearly establishe[d] the right of a plaintiff to be free from government officials' exerting their power or influence over a third-party employer to cause the plaintiff to be terminated for exercising his First Amendment rights." *Fletcher*, 26 F.4th at 282–83. *Kinney* was decided in 2004—nearly twenty years before Defendant Zamora sent the email. Based on clear Fifth Circuit jurisprudence, the law prohibiting government-officials from exerting their power or influence over a third-party employer to cause a plaintiff's termination was clearly established at the time of the incident.

Considering the clearly established law, the Court finds that a reasonable officer would have understood that threatening to sever ties with a third-party employer because of its employee's protected speech violated the law.

---

3. The Hansards' allege the November 8th email "kicked off" the retaliation campaign. (Doc. 12 at 21).

### ii.     Violation of Clearly Established Right

Turning to the second prong, George Hansard brings his First Amendment retaliation claim as an ordinary citizen. This means George Hansard must show (1) he was engaged in a constitutionally protected activity, (2) Defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) Defendants' adverse actions were substantially motivated against plaintiffs' exercise of constitutionally protected conduct. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) (citation omitted). The parties mainly dispute the second element.

George Hansard alleges he engaged in a protected activity when he "spoke at multiple District board meetings" voicing his concerns over bond proposals and irregularities in Defendants' management of FSISD. (Doc. 12 at 10). Defendants do not appear to contest that George Hansard's speech at the FSISD board meetings was a constitutionally protected activity. And indeed, the First Amendment protects George Hansard's speech at the FSISD board meetings. *See City of Madison, Joint Sch. Dist. No. 8 v. Wis. Emp. Rels. Comm'n*, 429 U.S. 167, 175 (1976) (holding citizens and teachers enjoy the First Amendment right "to comment on matters of public interest in connection with the operation of the public schools" at school board meetings). Rather, Defendants argue the Hansards "have not plausibly alleged *any* action by *any* of the Defendants that" violated their First Amendment rights. (Doc. 9 at 8).

To establish § 1983 liability, George Hansard "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Bevill v. City of Quitman*, No. 19-CV-406, 2020 WL 1065430, at *4 (E.D. Tex. Mar. 5, 2020), *aff'd sub nom. Bevill v. Fletcher*, 26 F.4th 270 (5th Cir. 2022). In other words, George Hansard must allege facts that show each Defendant acted to chill his speech or committed acts causally chilling his speech. *See Magnolia Island Plantation, LLC v. Whittington*, 29 F.4th 246, 251 (5th

Cir. 2022); *Jimerson v. Lewis*, 94 F.4th 423, 428 (5th Cir. 2024) ("A plaintiff seeking to overcome qualified immunity 'must specifically identify each defendant's personal involvement in the alleged wrongdoing.'" (citing *Thomas v. Humfield*, 32 F.3d 566, 1994 WL 442484, at *5 (5th Cir. 1994))); *Atkins v. McGuire*, No. 21-CV-810, 2023 WL 4503515, at *8 (S.D. Miss. July 13, 2023). Here, George Hansard only alleges specific facts as to Defendant Zamora.

### *(a)    Defendant Zamora*

Defendant Zamora "created" and sent the email launching the alleged "campaign of retaliation" against the Hansards. (Doc. 7 at 16; 12 at 12). The email attacked George Hansard's character, implied he was dangerous, implied a threat of physical violence, and attempted to start a criminal investigation against him. (*See* doc. 7-1 at 2–3). But as Defendants point out, "criticism, an investigation (or an attempt to start one), and false accusations [are] all harms that… may chill speech [but] are not actionable under" the Fifth Circuit's First Amendment jurisprudence. *Colson v. Grohman*, 174 F.3d 498, 512 (5th Cir. 1999).  Likewise, the Fifth Circuit has long held that mere threats of violence do not establish § 1983 liability. *See Gibson v. Jean-Baptiste*, 802 F. App'x 858, 859–60 (5th Cir. 2020) (per curiam) ("[W]e have consistently rejected threat-based retaliation claims."); *see Eaker v. City of Moss Point*, No. 20-CV-92, 2021 WL 771756, at *8 (finding verbal abuse or intimidation "unprofessional or inappropriate" but not "ris[ing] to the level of actionable constitutional injury under § 1983."). Yet George Hansard's First Amendment retaliation claim does not solely take root in these unfavorable accusations and implied threats of violence. George Hansard also alleges the email "sought to 'chill' Plaintiffs' speech by threatening George Hansard's employment." (Doc. 12 at 12).

The Fifth Circuit clarified in *Kinney v. Weaver* "that the government cannot harry the employer of an ordinary citizen who gave unwelcome testimony, seeking to have the employee fired in retaliation." 367 F.3d 337, 369 (5th Cir. 2004). Defendants distinguish this case from

*Kinney* and similar cases similar because George Hansard did not suffer any adverse action—he remains the Bank president. (Doc. 16 at 5). The question thus becomes: is a government-official's threats to an individual's employer without causing his termination sufficient to chill a person of ordinary firmness? This Court believes under *Kinney* the answer is yes.

The Fifth Circuit in *Kinney* considered circumstances like this case: indirect government action against an ordinary citizen's employer "to produce a result which [it] could not command directly." *Kinney*, 367 F.3d at 358 (citing *Perry v. Sindermann*, 408 U.S. 593 (1972)). Sitting *en banc*, the Fifth Circuit held:

> [T]he First Amendment is violated in "ordinary citizen" cases if the individual engaged in conduct protected by the First Amendment and the government took action against the person because of that protected conduct....It is plain that the government cannot harry the employer of an ordinary citizen who gave unwelcome testimony, seeking to have the employee fired in retaliation.

*Id.* at 358, 368; *see Bevill*, 2020 WL 1065430, at *7 (stating the holding in *Kinney* as "it is plain the government cannot harry the employer of an ordinary citizen who gave unwelcome testimony, seeking to have the employee fired in retaliation"). The Court finds that Defendant Zamora's threats against the Bank and harassment of George Hansard would chill a person of ordinary firmness. *See Lowery*, 690 F. Supp. 3d at 702 ("It is the chilling effect on free speech that violates the First Amendment, and it is plan that an implicit threat can chill as forcibly as an implicit threat.").

In the First Amended Complaint, the Hansards allege that one hour before polls closed on bond election, Defendant Zamora emailed not only George Hansard's employer, but also his employer's major clients. (Doc. 12 at 5). Defendant Zamora threatened to terminate an eight-year relationship between FSISD and the Bank unless George Hansard was removed as Bank president. *Id.* At the time, FSISD had average deposits of over two million dollars with the Bank. (Doc. 7 at 9). Defendant Zamora allegedly encouraged the Bank's major clients, the City of Fort

Stockton and the County of Pecos, to do the same. *Id.* These two clients averaged more than thirty million in combined deposits with the bank. *Id.* It is also clear from the Hansards' First Amended Complaint that the Hansards' speech motivated Defendant Zamora's email. He admits within the email that he writes in response to George Hansard's allegedly "vicious allegations" against the School Board. (*See* docs. 7-1 at 3; 12 at 18).

The Fifth Circuit in *Keenan* explained that a First Amendment retaliation claim requires "some showing that the plaintiffs' exercise of free speech has been curtailed." *Keenan*, 290 F.3d at 259. An injury capable of curtailing free speech "need not be great." *Id.* at 259; *Ordonez v. Gonzalez*, No. EP-23-CV-99, 2024 WL 1250181, at *19 (W.D. Tex. Mar. 25, 2024) ("Moreover, the extent of the deprivation 'need not be great' because 'there is no justification for harassing people for exercising their constitutional rights.'"). It does not require a plaintiff to stop speaking or to lose his livelihood. *Keenan*, 290 F.3d at 260. A plaintiff only needs to show his speech was chilled in some way. *Id.* Reading *Keenan* and *Kinney* together, the Court concludes that a government official exerting his or her "power or influence over a third-party employer" to indirectly attempt to cause the plaintiff's termination is an injury in the First Amendment context. *Bevill v. Fletcher*, 26 F.4th at 282–83; *see Perez v. Tedford*, No. SA-13-CV-429, 2013 WL 5740256, at *4 (W.D. Tex. Oct. 22, 2013) (denying to dismiss a First Amendment retaliation claim against a police officer who threatened a principal to discipline a teacher who spoke out against the police department).[4]

---

4. The parties dispute the meaning of *Perez v. Tedford*, No. SA-13-CV-429, 2013 WL 5740256, at *4 (W.D. Tex. Oct. 22, 2013). In *Perez*, our sister court denied a motion to dismiss where a police officer threatened a principal to discipline a school employee for comments the employee made against the police department. *Id.* The police officer told the principal that refusal to discipline the teacher would "endanger relations" between the school and the police department. The employee was subsequently terminated. *Id.* at *1. The *Perez* Court upheld the First Amendment retaliation claim against the police officer on grounds that the police officer "threatened" the school. That the police officer did not specifically ask the school to fire the employee did not matter. The Court finds that *Perez* lends support for the Court's interpretation in this case.

The Court finds Defendant Zamora is not entitled to qualified immunity. Accordingly, the Court **RECOMMENDS** the Motion to Dismiss be **DENIED** as to George Hansard's § 1983 First Amendment retaliation claims against Defendant Zamora. (Doc. 9).

*(b)   School Board Defendants*

George Hansard also brings his First Amendment retaliation claim against each School Board Defendant. This means Geroge Hansard must allege *each* Defendant's actions caused him to suffer an injury. *Jimerson v. Lewis*, 94 F.4th 423, 428 (5th Cir. 2024); *Meadours v. Ermel*, 483 F.3d 417, 421 (5th Cir. 2007); *Bevill*, 2020 WL 1065430, at *4. Defendants contend George Hansard "fail[s] to assert any factual allegations of any conduct by any of the school board members – regarding the email or anything else – in their individual capacities." (Doc. 9 at 3). The Court agrees.

Other than Defendant Zamora, the Hansards allege only conclusory allegations about the School Board Defendants' involvement with the email. For example, the Hansards allege Defendant Zamora created the email with "the approval, consent, and/or ratification" of the School Board Defendants. (Doc. 7 at 8). But the only factual support for this statement comes from Defendant Zamora "cop[ing] the entire School Board on the email." The email was directly sent to only two law enforcement officers; all other recipients—including George Hansard's employer—were copied on the email. (*See* docs. 7-1 at 2). The Hansards also allege the "Defendants, through common counsel, jointly rejected [the Hansards'] separate requests to each Defendant to retract the statements made in the email." (Docs. 7 at 8; 12 at 21). But this fact does not show the School Board Defendants had any part in creating and sending the email.

The Hansards' acknowledge discovery is needed to better understand each Defendants actions with respect to the retaliation. (*See* doc. 7 at 24; 12 at 21). As our sister court eloquently

expressed, "the Court is sympathetic to the notion that 'a § 1983 plaintiff who alleges mistreatment at the hands of a group of [officials] may not yet be able to describe with particularity the actions taken by each of them individually.'" *Navejas v. Jaso*, 700 F. Supp. 3d 532, 537 (W.D. Tex. 2023) (quoting *Cope v. Cogdill*, 3 F.4th 198, 208 n.6 (5th Cir. 2017)). And "[a]t one time, the Fifth Circuit countenanced 'a careful procedure,' whereby a district court could 'defer its qualified immunity ruling if further factual development [was] necessary to ascertain the availability of that defense.'" *Id.* at 537 (quoting *Carswell*, 54 F.4th at 312). This rule changed in *Carswell* when the Fifth Circuit held that "where the pleadings are insufficient to overcome [qualified immunity], the district court *must* grant the motion to dismiss without the benefit of pre-dismissal discovery." *Carswell*, 54 F.4th at 312.

The Court finds the conclusory allegations as to each School Board Defendant insufficient to overcome qualified immunity. Accordingly, the undersigned **RECOMMENDS** the Motion to Dismiss be **GRANTED** as to George Hansard's § 1983 First Amendment retaliation claims against the individual School Board Defendants. (Doc. 9).

### b. Stacy Hansard's First Amendment Retaliation Claim
#### i. Clearly Established Right

The Court now turns to Stacy Hansard's First Amendment retaliation claim, beginning with the clearly established prong. The Fifth Circuit has long held that "[a] state may not discharge an employee for exercising [her] right to free speech on matters of public concern." *Mooney v. Lafayette Cnty. Sch. Dist.*, 538 F. App'x 447, 453–54 (5th Cir. 2013) (citing *Page v. DeLaune*, 837 F.2d 233, 237 (5th Cir. 1988)). And as touched on below, the Fifth Circuit recently clarified in 2018 that a non-final decisionmaker can be held liable for retaliation under § 1983. *Sims v. City of Madisonville*, 894 F.3d 632, 639 (5th Cir. 2018). Because the *Sims* decision was rendered in 2018 and Stacy Hansard's alleged constitutional violation took place in 2023,

Stacy Hansard's constitutional right was clearly established at the time of incident. (*See* doc. 7 at 15). Considering the clearly established law, the Court finds that a reasonable officer would have understood that subjecting a public employee to a demotion-like transfer because of the employee's protected speech violated the law.

### ii.    Violation of Clearly Established Right

Unlike George Hansard, Stacy Hansard works for FSISD. To bring a retaliation claim as a public employee,[5] Stacy Hansard must allege: (1) she suffered an "adverse employment decision"; (2) her speech involved a matter of public concern;" (3) her "interest in commenting on matters of public concern…outweigh[s] Defendant's interest in promoting efficiency"; and (4) "her speech motivated the adverse employment action." *Beattie v. Madison Cnty Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001). Defendants contend Stacy Hansard has not sufficiently alleged an adverse employment action, and even if there was an adverse employment action, her claim must fail because she did not sue her employer—FSISD.[6] (Doc. 9 at 10).

---

5. It is unclear whether the Hansards bring Stacy Hansard's First Amendment retaliation claim as an ordinary citizen or a public employee. (*See* doc. 7 at 19). Because her alleged retaliation is an adverse employment action, and this adverse employment action occurred in her role as a public employee, the Court applies the public employee elements. That said, the Court's conclusion would not change if analyzed with the ordinary person elements. Stacy Hansard allegedly was the subject of threats in Defendant Zamora's email and received an email from the Defendants "under the guise of the District" that they would "seek attorney's fees in response to any continued pursuit of her 'frivolous claims.'" (Doc. 12 at 16). The Court does not doubt Defendant Zamora's email upset Stacy Hansard, but criticism, false accusations, and implied threats of violence are not actionable harms for First Amendment retaliation claims. *See Matherne v. Larpenter*, 2000 WL 729066, at *3 (5th Cir. May 8, 2000) (unpublished); *Eaker*, 2021 WL 771756, at *7–8.  The Court thus finds Stacy Hansard does not sufficiently alleged a First Amendment retaliation claim as an ordinary citizen against the individual Defendants.

6. Defendants offer no argument that Stacy Hansard was not speaking as an ordinary citizen. (Doc. 7 at 19). A public employee speaks as a citizen on a matter of public concern when the plaintiff speaks as a citizen dissociated with her public duties. *Howell v. Town of Ball*, 827 F.3d 515, 522–23 (5th Cir. 2016). Speech involves a matter of public concern "when it can be fairly considered as relating to any matter of political, social, or other concern to the community or when it is a subject of legitimate news interest; that is subject of general interest and of value to and concern to the public." *Gibson v. Kilpatrick*, 838 F.3d 476, 482 (5th Cir. 2016). Stacy Hansard adequately alleges her speech at the District Board meeting was outside her public duties as a student teaching aide and on a matter of public concern—FSISD mismanagement. *See Gibson*, 838 F.3d at 482 (holding speech exposing or addressing malfeasance, corruption or breach of the public trust, touches upon matters of concern).

Defendants allege Stacy Hansard's "mere reassignment" from working with special needs children to regular crosswalk and cafeteria duty without a change in pay or benefits cannot support a § 1983 claim. *Id.* at 10. The Court disagrees. The Fifth Circuit has held that transfers to less desirable positions even without a change in pay or tangible benefits can constitute demotions in violation of § 1983. *Porter v. Valdez*, 424 F. App'x 382, 387 (5th Cir. 2011) (per curiam) ("To be equivalent to a demotion, [however,] a transfer need not result in a decrease in pay, title, or grade; it can be a demotion if the new position proves objectively worse—such as being less prestigious or less interesting or providing less room for advancement."); *Serna v. City of San Antonio*, 244 F.3d 479, 483 (5th Cir. 2001) ("A transfer, even without an accompanying cut in pay or other tangible benefits, may constitute an adverse employment action under 42 U.S.C. § 1983."); *see Forsyth v. City of Dallas*, 91 F.3d 769, 774 (5th Cir. 1996).

Stacy Hansard has worked as an FSISD special needs teaching aide for about 15 years. (Doc. 7 at 15). Prior to publicly speaking out about Defendants, Stacy Hansard was "rarely" pulled away from her special needs students to attend to other duties, such as substitute teaching, cafeteria duty, and crosswalk duty. *Id.* After speaking out about Defendants, Stacy Hansard alleges "her work with special needs children was significantly reduced," and she was placed on permanent crosswalk duty, regularly placed on cafeteria duty, and "regularly pulled away from her special needs child for substitute teacher work." *Id. at* 15–16. She also alleges that crosswalk duty and cafeteria duty "are generally viewed as undesirable roles among teachers." *Id.* at 15. At this early stage, Stacy Hansard alleges a demotion-like transfer in job responsibilities. *See Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220–21 (5th Cir. 1999) (finding even in the education context transfers when intended to be disciplinary can constitute a demotion). Stacy Hansard thus alleges an adverse employment action.

"Defendants agree that if [Stacy Hansard's] alleged facts show that she was demoted, those allegations might be able to support a retaliation claim *against her employer*." (Doc. 9 at 10). The Court turns to whether Stacy Hansard's claim must fail because she sued the individual school board members rather than her employer—FSISD. The Court interprets this argument as raising the question of "whether only final decisionmakers can be individually liable for First Amendment retaliation claims." *Sims*, 894 F.3d at 639. The Fifth Circuit says yes.

The Fifth Circuit clarified in *Sims* that "individual liability for a government official who violates constitutional rights, including First Amendment ones, turns on traditional tort principles of 'but-for' causation." *Sims*, 894 F.3d at 639. Looking to its earliest case on the issue, the Fifth Circuit explained "an individual is liable for First Amendment retaliation if her [or his] unlawful conduct is a link in the causal chain that resulted in the plaintiff's firing." *Id*. at 640.  It is clear: the "'causal link' standard sets the causation requirement for a suit against an individual defendant with retaliatory motives who does not make the final employment decisions." *Id.* at 641. Put simply, even if Defendants are not Stacy Hansard's employer, and not final decisionmakers, Stacy Hansard can still bring her First Amendment retaliation claim.[7]

But to bring her claim against a final decisionmaker or a non-final decisionmaker, Stacy Hansard must show a "causal link" between each Defendant and her demotion-like transfer.[8] *See Fletcher*, 26 F.4th at 281 ("[A school employee] needed only to 'establish an affirmative causal link between' a principal's recommendation to the district, i.e., higher authority, that it reassign the director to another position and the district's decision to do so." (quoting *Jett v. Dall. Indep.*

_____

7. The Hansards allege Defendants were the final decisionmakers. (Doc. 7 at 3).

8. As mentioned above, a plaintiff seeking to overcome qualified immunity "must specifically identify each defendant's personal involvement" either directly or causally. *Jimerson*, 94 F.4th at 428 ("A plaintiff seeking to overcome qualified immunity 'must specifically identify each defendant's personal involvement in the alleged wrongdoing.'" (citing *Thomas*, 1994 WL 442484, at *)).

*Sch. Dist.*, 798 F.2d 748, 758 (5th Cir. 1986))). Stacy Hansard also relies on a "chronology of events" to demonstrate the adverse employment action was "precipitated by the protected speech." (Doc. 12 at 20); *see Mooney v. Lafayette Cnty. Sch. Dist.*, 538 F. App'x 447, 454 (5th Cir. 2013) (stating the causal connection prong "may be satisfied when the plaintiff relies upon a chronology of events from which retaliation may be plausibly inferred").

Defendants argue that "nowhere in [Stacy Hansard's] Response or in the [First] Amended Complaint" does she allege "the official[s] causing the violation." (Doc. 16 at 6). The Court agrees. Looking to the First Amended Complaint, Stancy Hansard claims she was placed on cafeteria duty for the first time in January 2023—only two months after Defendant Zamora emailed the Bank. (Doc. 7 at 15). Yet she provides no information on *who* assigned her to cafeteria duty, or *how* Defendants influenced this reassignment. The following school year she was "permanently put on crosswalk duty" and "routinely assigned substitute teacher work." (Doc. 12 at 20). But again, she provides no information on *who* reassigned her or *how* Defendants influenced this reassignment. She thus fails to allege any personal involvement or conduct on behalf of any Defendant resulting in a deprivation of her constitutional rights. *See King v. Louisiana*, 294 F. App'x 77, 83 (5th Cir. 2008) ("For there to be liability under § 1983, a defendant must have been personally involved in the conduct causing the deprivation of constitutional rights, or there must be a causal connection between the actions of that person and the constitutional right sought to be redressed."). For this reason, the Court finds Stacy Hansard has not sufficiently alleged a First Amendment retaliation claim against Defendants.

The Court finds the conclusory allegations as to each Defendant insufficient to overcome qualified immunity. The Court therefore **RECOMMENDS** the Motion to Dismiss be

**GRANTED** as to Stacy Hansard's § 1983 First Amendment retaliation claims against Defendants. (Doc. 9).

### 2.    Conspiracy

Because Defendant Zamora is not entitled to qualified immunity as to George Hansard's First Amendment retaliation claim, the Court must determine whether the Hansards state a claim for conspiracy under § 1983. *See Fletcher*, 26 F.4th at 270; *Morales v. Carrillo*, No. EP-19-CV-00217, 2020 WL 3684864, at *12 (W.D. Tex. July 6, 2020) (explaining even if a defendant is entitled to qualified immunity a conspiracy claim may still attach if it is determined that there was a constitutional deprivation committed by one of the participants to the conspiracy), *R. & R. adopted as modified*, 2021 WL 664854 (W.D. Tex. Feb. 19, 2021). A § 1983 conspiracy claim requires the Hansards to prove: (1) the existence of a conspiracy involving state action, and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Bevill v. City of Quitman*, No. 19-CV-00406, 2023 WL 3761245, at *7 (E.D. Tex. June 1, 2023) (citing *Armstrong v. Ashley*, 60 F.4th 262, 280 (5th Cir. 2023)), *aff'd sub nom. Bevill v. Wheeler*, 103 F.4th 363 (5th Cir. 2024).

"A conspiracy may be charged under [§] 1983 as the legal mechanism through which to impose liability on all defendants without regard to who committed the particular act." *Latiolais v. Cravins*, 484 F. App'x 983, 988–89 (5th Cir. 2012) (per curiam). The Hansards must "show that the defendants entered into an agreement to deprive [George Hansard] of his rights." *Quitman*, 2023 WL 3761245, at *10 (quoting *Imani v. City of Baton Rouge*, 614 F. Supp. 3d 306, 373–74 (M.D. La. 2022)). Direct evidence of an agreement is not required; the Hansards need only "come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." *Id.* (citing *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996)). Circumstantial evidence can include: something the alleged

conspirators did or said to create an understanding, the approximate time the agreement was made, the specific parties to the agreement, the period of the conspiracy, or the object of the conspiracy. *Id.* (citing *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 295 (3d Cir. 2018)). Conclusory allegations a conspiracy occurred without factual support are insufficient. *Rodriguez v. Children's All. of S. Tex.*, No. SA-17-CV-599, 2018 WL 523213, at *5 (W.D. Tex. Jan. 23, 2018).

The Hansards claim Defendants conspired to apply economic pressure on the Bank attempting to indirectly cause George Hansard's termination. (*See* doc. 12 at 21). Unlike most conspiracies, the Hansards allege Defendants' plan was explicitly stated in Defendant Zamora's email. *See Quitman*, 2023 WL 3761245, at *11 (explaining conspiracies "are rarely evidenced by specific agreements" (quoting *Mack v. Newton*, 737 F.2d 1343, 1350 (5th Cir. 1984))). Defendant Zamora stated he "planned to recommend the district change depository banks as soon as legally possible." (Doc. 7 at 12). The School Board Defendants were no doubt aware of this plan. Defendants were copied on the email, and Defendants received emails from the Hansards' counsel asking for retraction. (Doc. 12 at 21).  Sure enough, Defendants voted to move FSISD's depository to a bank with less favorable terms. (Doc. 7 at 14–15). The Hansards also allege Defendants failed to pay $70,000 in contractor invoices factored through the Bank, which the Bank ultimately wrote off. (Doc. 7 at 15).

At this early stage, the Court finds the Hansards have sufficiently alleged a Section 1983 conspiracy. The Hansards plead facts plausibly suggesting Defendants retaliated against George Hansard to protect their reputations after he publicly made "vicious allegations against [Defendant Zamora] and the school board." (Doc. 12 at 4); *Fletcher*, 26 F.4th at 284. Defendant Zamora's email explicitly stated his "plan" to change depository banks, and the FSISD's

rejection of George Hansard's bid "raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Fletcher*, 26 F.4th at 284 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. at 557). The Hansards also assert that "all Defendants, through common counsel, jointly rejected" the Hansards individual request to "apologize, retract, and correct" the statements made in Defendant Zamora's email.[9] (Doc. 7 at 13). This provides circumstantial evidence Defendants supported Defendant Zamora's plan. That the Hansards do not know which Defendants voted against FSISD renewing its banking relationship with the Bank is irrelevant; liability can be imposed based on alleged membership in a conspiracy regardless of whether the defendant's actions alone constituted a constitutional violation. *Id.* (citing *Latiolais*, 484 F. App'x at 283); *Hale*, 45 F.3d at 920.

The Court therefore **RECOMMENDS** the Motion to Dismiss be **DENIED** as to the Hansards' § 1983 civil conspiracy claim. (Doc. 9).

### C.      State Claims

The Hansards also bring several state-law claims against Defendants. Defendants maintain they are entitled to immunity from the Hansards' defamation and intentional infliction of emotional distress claims under Texas common law and the Texas Education Code. (Doc. 9 at 13–16). Defendants also move to dismiss all state-law claims against the School Board Defendants for failure to state a claim. *Id.* at 17–20.

#### 1.      Common Law Immunity

At the outset, the Hansards and Defendants disagree on whether the Texas Tort Claims Act ("TTCA") governs Defendants' governmental immunity defense. (Docs. 9 at 14; 12 at 23;

---

9. The Court makes a distinction between the email showing the School Board Defendants participation in the conspiracy and participation in sending the email. The email from Defendant's joint counsel came *after* Zamora sent his email but *before* the school board vote regarding the Bank. The Court accepts the Hansards' allegation that Defendants' unwillingness to retract Defendant Zamora's statements *after the fact* shows agreement among Defendants.

16 at 7).  Defendants contend "they are immune from suit and liability under the *common law* of Texas because they are being sued as board members and the superintendent of a governmental entity." (Doc. 16 at 7). The Hansards interpret this as Defendants contending the state-law claims are "barred by state law under the [TTCA], presumably the election of remedies provision" in Section 101.106(f). (Doc. 12 at 23). Defendants adamantly disagree, stating "Defendants are not relying on the Texas Tort Claims Act for their immunity," and then reasserting governmental immunity. (Docs. 9 at 14; 16 at 7–8); *see Rosenstein v. City of Dallas*, 876 F.2d 392, 395 (5th Cir. 1989) (dismissing state-law claims for governmental immunity); *City of N. Richland Hills v. Friend*, 370 S.W.3d 369, 372–73 (finding a waiver of governmental immunity under the TTCA). Left with no other interpretation, the Court understands Defendants to assert governmental immunity.

Governmental immunity "prohibits suits against the state or its governmental entities, unless the state consents to be sued." *Bonillas v. Harlandale Indep. Sch. Dist.*, 832 F. Supp. 2d 729, 735 (W. D. Tex. June 2, 2011). School districts are governmental entities and thus protected by governmental immunity. *Id.* When defendants are sued in their official capacities, the officials enjoy the same immunities as the governmental entity. *Fernandez v. San Antonio Hous. Auth.*, No. SA05CA106, 2005 WL 2656671, at *6–7 (W.D. Tex. Oct. 11, 2005) ("Because an official sued in his official capacity enjoys the same immunities as the public entity, Plaintiff's state-law claims for intentional infliction of emotional distress against [Defendants] in their official capacities are [d]ismissed."), *rev'd on other grounds*, 2006 WL 1073450 (W.D. Tex. Apr. 10, 2006); *Farshid ex rel.*, *E.K.*, 688 F. Supp. 3d at 397–98 ("an employee sued in his official capacity has the same governmental immunity, derivatively, as his governmental employer" (quoting *Franka v. Velasquez*, 332 S.W.3d 367, 382–83 (Tex. 2011)). Here, however, the

Hansards sue all Defendants in their individual capacities.[10] Governmental immunity thus does not shield Defendants.[11]

For this reason, the Court **RECOMMENDS** Defendants' Motion to Dismiss on governmental immunity grounds be **DENIED**. (Doc. 9).

### 2.      Professional Immunity

Finding governmental immunity does not apply, the Court turns to Defendants assertion of professional immunity under Texas Education Code § 22.0511. (Doc. 9 at 14). Section 22.0511 gives professional school employees immunity from liability for actions taken within the scope of their employment—not immunity from suit. This means that § 22.0511 "does not bar suit against District Employees in their individual capacities and thus would not deprive the trial court of subject-matter jurisdiction" over the Hansards' defamation and intentional inflection of emotional distress claims. *Arlington Indep. Sch. Dist. v. Williams,* Nos. 02-23-00142, 02-23-00155, 2023 WL 8643040, *7 (Tex. App.—Fort Worth Dec. 14, 2023, no pet. h.), *reh'g denied* (Jan. 11, 2024). To that end, Defendants are incorrect to assert professional immunity under Rule 12(b)(1) as an issue of this Court's subject matter jurisdiction. (Doc. 9 at 13–17).

---

10. As our sister court has explained: "Before the Texas State Legislature passed the [TTCA] in 1969, 'if [a] suit against the government was barred by immunity, a plaintiff could sue and recover against a government employee-actor in his individual capacity even though, were he sued for the same conduct in his official capacity, he would be shielded by derived governmental immunity.'" *Tipps v. McCraw*, 945 F. Supp. 2d 761, 765 (W.D. Tex. 2022) (quoting *Franka v. Velasquez*, 332 S.W.3d 367, 383 (Tex. 2011)).

11. The Court adds that governmental immunity and official immunity are distinct. *See DeWitt v. Harris County*, 904 S.W.2d 650, 653 (Tex. 1995); *City of Houston v. Nicolai*, 2023 WL 2799067, at *17 (Tex. App.—Houston [1st Dist.] Apr. 6, 2023, no pet. h.) (en banc). To what, if any, extent Defendants meant to plead official immunity is unclear, but official immunity is an affirmative defense that must be pleaded and proved. *McMurry v. Midland Indep. Sch. Dist.*, No. 20-CV-00242, 2021 WL 4354615, at *16 (W.D. Tex. Sept. 3, 2021); *Tex. Dept. of Pub. Safety v. Rodriguez*, 344 S.W.3d 483, 489 (Tex. App.—Houston [1st Dist] 2011, no pet.). The Court thus does not construe Defendants' Motion to Dismiss as affirmatively pleading official immunity.

The Court nevertheless considers Defendants' assertion of professional immunity on grounds that Defendants' actions were discretionary and within the scope of their employment. *Id. at 15*. Section 22.0511 provides:

> A professional employee of a school district is not personally liable for any act that is incident to or within the scope of the duties of the employee's position of employment and that involves the exercise of judgment or discretion on the part of the employee, except in circumstances in which a professional employee uses excessive force in the disciple of students or negligence resulting in bodily injury to students.

TEX. EDUC. CODE § 22.0511(a). A defendant is entitled to immunity if the defendant (1) is a professional employee of a school district; (2) his or her actions were incident to or within the scope of the duties of his or her position or employment; (3) his or her duties involved the exercise of judgment or discretion on his or her part; and (4) the act falls outside the stated statutory exceptions. *Kobza v. Kutac*, 109 S.W.3d 89, 93 (Tex. App.—Austin 2003, pet. denied). Immunity under § 22.0511 is an affirmative defense, so Defendants have the burden of establishing the elements.

The Act defines "professional employee" as, among other things, a "superintendent" and "a member of the board of trustees of an independent school district." TEX. EDUC. CODE § 22.051(a)(1), (5). As FSISD superintendent and FSISD board members, Defendants are therefore immune from liability under § 22.0511 if their actions were within the scope of their employment. The Hansards unsurprisingly base their challenge on the second element: Defendants acts were outside the scope of their employment. (Doc. 12 at 24). [12]

"A professional employee acts within the scope of his or her employment when 'the general act from which injury arose was in furtherance of the employer's business and for the accomplishment of the object for which the employee was employed.'" *Walker v. Beaumont*

---

12. Neither party appears to contest these duties were discretionary rather than ministerial.

*Indep. Sch. Dist.*, No. 15-CV-379, 2016 WL 6666833, at \*19 (E.D. Tex. Aug. 18, 2016) (quoting *Chesshir v. Sharp*, 19 S.W.3d 502, 504–05 (Tex. App.—Amarillo 2000, no pet.)), *R. & R. adopted as modified*, 2016 WL 6693170 (E.D. Tex. Sept. 14, 2016).  "General act" refers to the general course of conduct undertaken. *Id.* This requires an objective analysis: "[i]s there a connection between the employee's job duties and the alleged tortious conduct?" *Laverie v. Wetherbe*, 517 S.W.3d 748, 753 (Tex. 2017). "The employee's state of mind, motives, and competency are irrelevant so long as the conduct itself was pursuant to the employee's job responsibilities." *Robertson v. Intrateki Comp., Inc.*, No. 18-CV-00373, 2023 WL 4084515, at \*4 (W.D. Tex. June 19, 2023).

The Court addresses the School Board Defendants and Defendant Zamora separately. The Court finds the School Board Defendants immune from liability under § 22.0511. Beyond conclusory allegations explored below that Defendant Zamora created the email with "the approval, consent, and/or ratification" of the School Board Defendants, no other actions are attributable to the School Board Defendants individually or collectively. Defendants also ask the Court to take judicial notice[13] of the FSISD Board Policy Manual, which provides a listing of the superintendent's duties. (Doc. 9 at 15 n.2). One responsibility includes maintaining a relationship with the Board and keeping the Board informed of issues as they arise. FORT STOCKTON ISD, Policy Code BJA – Superintendent: Qualifications and Duties – Fort Stockton ISD Board Policy Manual - Policy Online (tasb.org) (last visited July 31, 2024); *see also* TEX. EDUC. CODE § 11.201. As the Hansards provide, the School Board Defendants' "job" is to "govern and oversee" the FSISD public schools. (Doc. 12 at 24 (citing TEX. EDUC. CODE § 11.151(b))). The

---

13. Because the FSISD Board Policy Manual is a matter of public record and directly relevant to the issue at hand, the Court takes judicial notice. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (holding a district court appropriately took judicial notice of matters of public record on a motion to dismiss); *see Walker*, 2016 WL 6666833, at \*19 (accepting defendants' professional certificates).

Court finds it within the School Board Defendants' duties to receive, open, and read emails sent from the FSISD superintendent. For this reason, the Court finds the School Board Defendants immune from liability under § 22.0511.

The question of Defendant Zamora's immunity is more complicated. As superintendent, Defendant Zamora is the educational leader and chief executive officer of FSISD. (Doc. 9 at 15). His duties include effective planning and management of District administration, finances, operations, and personnel. *See* TEX. EDUC. CODE § 11.201; (Doc. 12 at 25). And, as discussed, he is required to maintain a relationship with the Board and keep the Board informed of significant issues as they arise. TEX. EDUC. CODE § 11.201. Thus, emailing the School Board Defendants voicing concerns with FSISD's continued relationship with the Bank due to George Hansard's alleged conflicts of interest and announcing his recommendation to sever ties with the Bank fall within his duties as superintendent. *See Rogan v. Lewis*, 975 F. Supp. 956, 961 (S.D. Tex. 1997) (holding a superintendent immune from suit stemming from a recommendation to the Board of Trustees to fire a particular teacher); *Jones v. Houst. Indep. Sch. Dist.*, 979 F.2d 1004, 1007 (5th Cir. 1992) (holding school administrators immune for publication of a memorandum questioning a teacher's fitness for employment); *Robinson v. Brannon*, 313 S.W.3d 860, 867 (Tex. App.— Houston [14 Dist.], 2010, no pet.) (holding a director of human resources was within the scope of his duties when investigating and placing a teacher on administrative leave). As a result, Defendant Zamora is immune from liability under § 22.0511 to the extent he emailed the FSISD Board.

Yet Defendant Zamora did not stop there. He also emailed George Hansard's employer, local government officials, and local law enforcement. The Hansards identify three acts they contend fall outside Defendant Zamora's scope of employment: (1) "falsely accusing George

Hansard of committing domestic violence"; (2) "using [his] association with the District to induce George Hansard's termination"; and (3) using his association with the District to "incite a criminal investigation." (Doc. 12 at 24–25); *see Robertson*, 2023 WL 4084515, at *4 (declining to find that if *some* claims are outside of the scope of employment, then *all* claims must be found outside the scope). The Hansards contend Defendant Zamora was "peddling influence" to induce Goerge Hansard's termination and incite a criminal investigation. (Doc. 12 at 25); *Gil Ramirez Grp*, *LLC v. Hous. Indep. Sch. Dist*., 786 F.3d 400, 417 (5th Cir. 2015) (*GRG 1*) (holding "bribery and peddling influence" are "wholly outside the legitimate scope" of a school trustee's duties).

The Court finds Defendant Zamora was not acting with the scope of his duties when he used his association with FSISD to induce George Hansard's termination and accuse George Hansard of spousal abuse. (Doc. 7 at 9). Defendants provide no explanation for Defendant Zamora's allegations of spousal abuse and how such allegations could plausibly relate to his duties as superintendent. (*See* doc. 9 at 16). Defendants likewise provide no explanation on why an allegedly personal conflict of interest between FSISD and George Hansard requires emailing George Hansard's employer and his employer's largest clients to induce his termination. (Doc. 7 at 12 ("George Hansard's actions have nothing to do with his position with the Bank.")). Defendants attempt to liken this case to *Lane v. Young* where a superintendent investigated the transfer of money out of the District's account into a private account. No. 09-06-260 CV, 2007 WL 63660, at *4 (Tex. App.—Beaumont Jan. 11, 2007, no pet.). This case is distinguishable. Here, Defendant Zamora allegedly emailed the Bank and community leaders because he disagreed with George Hansard's comments at two FSISD board meetings.  At this early stage, the Court finds merit to the Hansards' contention that Defendant Zamora was "peddling

influence" to remove George Hansard as Bank president. (Doc. 25 at 12). Defendants only response to this argument is that no Defendant personally benefited from the email. (Doc. 16 at 9). The Court therefore finds Defendants did not satisfy their burden to show Defendant Zamora was acting within the scope of his duties when he sent the email with accusations of domestic violence and attempts to induce George Hansard's termination.

Finally, the Court reasonably believes it is within a superintendent's duties to report a potential threat of violence, but Defendants have the burden to show this reasonable belief is true. Defendants refer the Court to two listings of superintendent duties, but do not explain how reporting a threat of violence falls within those duties. Instead, Defendants summarily argue that Defendant "Zamora copied other individuals on the email because he was concerned about the threat of potential violence by [George] Hansard" and "both the form and content of the email show that [Defendant] Zamora was acting as 'the education leader and chief executive officer of the school district.'" (Doc. 9 at 15–16). The Court finds that Defendants did not satisfy their burden to show Defendant Zamora's attempts to start a criminal investigation against George Hansard fell within his responsibilities as superintendent. *See Moreno v. Northside Indep. Sch. Dist.*, No. SA-11-CA-0746, 2012 WL 13029076, at *10 (W.D. Tex. Jan. 23, 2012) (finding where a defendant fails to bear its burden dismissal under 12(b)(6) is not appropriate). For this reason, the Court finds Defendant Zamora is not immune from liability to the extent he accused George Hansard of spousal abuse, attempted to induce his termination, and attempted to incite a criminal investigation.

In sum, the Court **RECOMMENDS** the School Board Defendants are **IMMUNE** from liability under § 22.0511. The Court also **RECOMMENDS** Defendant Zamora is **IMMUNE** from liability under § 22.0511 to the extent he voiced concerns about FSISD's ongoing

relationship with the Bank and his future recommendation to change banks. The Court further **RECOMMENDS** Defendant Zamora is **NOT IMMUNE** from liability under § 22.0511 to the extent he accused George Hansard of spousal abuse, attempted to induce George Hansard's termination, and attempted to incite a criminal investigation against George Hansard. (Doc. 9).

### 3. Defamation

Should the School Board Defendants not be entitled to professional immunity, Defendants also move to dismiss the Hansards' defamation claim against the School Board Defendants for failure to state a claim. (Doc. 9 at 18). Defendants do not move to dismiss the defamation claim against Defendant Zamora. *Id.* The Hansards clarified in their Response that "the email [allegedly] constitutes defamation" only to George Hansard. (Doc. 12 at 27).

To establish a defamation cause of action, George Hansard must allege the School Board Defendants (1) published a false statement of fact to a third party, (2) the statement must concern George Hansard and be defamatory, (3) the publication was made with the requisite degree of fault, and (4) the publication must cause damages. *Walker*, 938 F.3d at 743 (citing *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015)). "A statement is defamatory 'if it tends to injure a person's reputation and thereby expose the person to public hatred, contempt, ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation.'" *Id.* Unless the defamatory statements are defamatory per se, George Hansard must also plead and prove damages. *In re Lipsky*, 460 S.W.3d at 593. As to the fault element, the person alleging defamation determines the requisite degree of fault. *Walker*, 938 F.3d at 744 (citing *Lipsky*, 460 S.W.3d at 593). Geroge Hansard is a private individual, so he need only prove negligence. *Id.*

At issue here is the first element: publication of a statement. The School Board Defendants move to dismiss George Hansard's defamation claims contending George Hansard has "not alleged that anyone other than [Defendant] Zamora published any statement about

[George] Hansard[] to a third party." (Doc. 9 at 19). George Hansard contends his allegations "establish that Defendants created and sent the email with the requisite degree of fault." (Doc. 12 at 28). The Court thus turns to the Hansards' allegations.

> As to the email, the Hansards allege:
>
> On November 8, 2022, the day the school bond was set to vote, Defendant Gabriel Zamora created an email, with the approval, consent and/or ratification of the Defendants Billy Espino, Freddie Martinez, Anastacio "Nacho" Dominguez, Flo Garcia, III, Sandra Rivera, Ursula Sanchez, and Andy Rivera, and caused it to be published one hour before the close of the bond election. Defendants were aware of the retaliating and unconstitutional actions and knew and were consulted about and participated with the email. Further, Gabriel Zamora copied the entire Board on the email.
> …
> Defendant Gabriel Zamora was the author of the November 8, 2022 email, but it was written with knowledge and approval of the other Defendants, and said Defendants acted with actual malice in publishing and distributing the email in that they knew the defamatory statements were false.

(Doc. 7 at 8, 20).

The Hansards' defamation claims as to the School Board Defendants fail because their factual assertions as to their involvement are conclusory. The Hansards do not allege any facts showing the School Board Defendants approved of the email or had prior knowledge of the email. The only facts the Hansards provide is that Defendant Zamora "copied the entire Board on the email," and when the Hansards asked Defendants months later to retract the email, counsel for FSISD responded, "stating that they have no plans to apologize, retract, or correct any of the opinions expressed or questions posed by the email." (Doc. 7 at 8, 21). As elsewhere discussed, even George Hansard's employer was copied—not directly sent—the email. And the FSISD's statement after-the-fact does not show the School Board Defendants approved or knew about the email prior to receiving it from Defendant Zamora. The allegations also fail to show that anyone other than Defendant Zamora published the email to third parties. The Court finds these bare

assertions do not provide enough factual content to allow the Court to draw the reasonable inference that the School Board Defendants published the email. *Iqbal*, 556 U.S. at 678.

The Court therefore **RECOMMENDS** the Motion to Dismiss be **GRANTED** as to the defamation claims against the School Board Defendants. (Doc. 9).

### 4.        Intentional Infliction of Emotional Distress

Should Defendants not be immune from liability, the Hansards also bring an intentional infliction of emotional distress claim against all Defendants. The Hansards clarify in their Response that "the email establishes an intentional tort for emotional distress" to Stacy Hansard. (Doc. 12 at 27). Defendants argue the Hansards cannot maintain an intentional infliction of emotional distress ("IIED") claim for two reasons: (1) the Hansards allege no extreme or outrageous conduct; and (2) IIED is a "'gap-filler' tort never meant to supplant or duplicate existing statutory or common-law remedies." (Doc. 9 at 18 (quoting *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005))). The Court begins with Defendants' second argument.

IIED "is a 'gap-filler' tort, allowing recovery in the rare instances in which a defendant intentionally inflicts severe emotional distress in an unusual manner, so the victim has no other recognized theory of redress." *Lowe v. Hearts Commc'ns, Inc.*, 414 F. Supp. 2d 669, 675 (W.D. Tex. Feb. 6, 2006) (citing *Hoffmann-La Roche*, 144 S.W.3d at 447). "Where the gravamen of a plaintiff's complaint is really another tort, [IIED] should not be available." *Id.* Put simply, IIED "is not available when the actor 'intends to invade some other legally protected interest,' even if emotional distress results." *Id.* Here, Defendants contend the Hansards "are using their [IIED] claim as a mere duplicate for their defamation claim." (Doc. 9 at 18).

The Hansards acknowledge an IIED claim serves as a "gap-filler" tort. (Doc. 12 at 28). The Hansards also clarify that the IIED claim applies only to Stacy Hansard who does not assert

a defamation claim as to the email. *Id.* at 28. George Hansard, on the other hand, "has no IIED claim because defamation provides a potential recovery for relief as to the email 'concerning' him." *Id.* Even so, a gap does not exist simply because a plaintiff opts to pursue IIED instead of another remedy. *See Creditwatch,* 157 S.W.3d at 816 ("Even if other remedies do not explicitly preempt the tort, their availability leaves no gap to fill."). Thus, the question becomes: can Stacy Hansard bring a defamation claim as to the email? The Hansards argue she cannot. (Doc. 12 at 28).

Reading the First Amendment Complaint in a light favorable to the Hansards, the Court agrees. As the Hansards contend "the email statements 'concern' alleged acts by George Hansard not Stacy Hansard. At most, Stacy Hansard is inappropriately painted as a victim of spousal abuse." *Id.* Since Stacy Hansard does not and cannot bring a defamation claim, there is a gap to fill. *See Tu Nguyen v. Duy Tu Hoang*, 318 F. Supp. 3d 983, 1025 (S.D. Tex. 2018) (finding no gap to fill when plaintiff's IIED claims stemmed from the same statements plaintiff alleged were defamatory). The Court thus turns to Defendants second argument.

To recover damages for IIED under Texas law, Stacy Hansard must allege: (1) Defendants acted intentionally or recklessly; (2) Defendants' conduct was extreme and outrageous; (3) Defendants actions caused Stacy Hansard emotional distress; and (4) the resulting emotional distress was severe. *Moghtader v. Geo Grp., Inc.*, No. 18-CV-632, 2019 WL 2549232, at *6 (W.D. Tex. June 20, 2019) (quoting *Hoffmann-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004)). At issue here is the second element. "The second element requires conduct that is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Tu Nguyen*, 318 F. Supp. 3d at 1024 (quoting *Hersh v. Tatum*, 526 S.W.3d 462,

468 (Tex. 2017)). "Generally, insensitive or even rude behavior does not constitute extreme and outrageous conduct," and "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities do not rise to the level of extreme and outrageous conduct." *Id.* (citing *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex. 1999)).

The Court finds Stacy Hansard does not and cannot sufficiently allege an IIED claim. A single email lays the groundwork for Stacy Hansard's claim.[14] One email does not rise to the level of extreme and outrageous required for an IIED claim. *See Tyson v. Austin Eating Disorders Partners, LLC*, No. A-13-CV-180, 2013 WL 3197641, at *8 (W.D. Tex. June 21, 2013) (finding an IIED claim premised on a single email insufficient); *Bill Wyly Dev., Inc v. Smith*, 680 S.W.3d 679, 685 (Tex. App.—Houston [14th Dist.] 2023, no pet.) ("Generally, only actions of a particular severity and or repeated or continued duration will enter the realm of extreme and outrageous conduct."). The Court understands "Fort Stockton is a small community, and [w]hatever statements are made are presumed to travel." (Doc. 12 at 2). But these facts do not change that attacks on character, threats, accusation of criminal conduct, and mean-spirited comments do not raise to the level of extreme and outrageous. *See Bruce*, 998 S.W.2d at 617 ("occasional malicious and abusive incidents should not be condoned, but must often be tolerated in our society."); *Tyson*, 2013 WL 3197641, at *9 (explaining accusations of criminal conduct do

---

14. Stacy Hansard directs the Court's attention to *Escalante v. Koerner*, 28 S.W.3d 641, 643 (Tex. App.—Corpus Christi 2000, pet. denied) for the proposition that a single event or conversation can give rise to extreme and outrageous conduct. (Doc. 12 at 30). The Court notes the circumstances in *Escalante* and this case are drastically different. In *Escalante*, a woman gave birth to one healthy twin and was told the other twin died and was "reabsorbed," meaning there was no infant to bury. *Escalante*, 28 S.W.3d at 644. This was not true, and the deceased infant was disposed of as surgical waste. *Id.* The physician knew the mother and her husband wanted to bury the remains. *Id.* This was considered extreme and outrageous. Other single incidents of extreme and outrageous conduct are similar in that they involve a direct and imminent harm. *See Morgan v. Anthony*, 27 S.W.3d 928, 930–31 (Tex. 2000) (finding a defendant that stopped to aid a woman experiencing car trouble and then proceeded to sexually taunt her, stare at her inappropriately, and pursue and harass until she could call for help extreme and outrageous).

not rise to the level of extreme and outrageous). The Court therefore **RECOMMENDS** Defendants' Motion to Dismiss Stacy Hansards' claim for IIED be **GRANTED**. (Doc. 9).

### 5.    State Conspiracy

The Hansards final claim asserts a civil conspiracy against Defendants. Civil conspiracy is not an independent tort. *Agar Corp. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019). Rather, "it is a theory of vicarious liability by which a plaintiff may seek to hold another individual liable for the commission of an unlawful act that the individual did not commit but that his co-conspirator did." *Whitelock v. Stewart*, 661 S.W.3d 583, 607 (Tex. App.—El Paso 2023, pet. filed). A claim for civil conspiracy requires the Hansards to allege: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. *Agar Corp.*, 580 S.W.3d at 141 (citing *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983)).

"A defendant's liability for conspiracy depends on 'participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable.'" *Butowsky v. Folkenflik*, No. 18-CV-442, 2019 WL 2518833, at *48 (E.D. Tex. Apr. 17, 2019) (quoting *Cotton v. Weatherford Bancshares, Inc.*, 187 S.W.3d 687, 701 (Tex. App.—Fort Worth 2006, pet. denied)). Here, the Hansards' only remaining tort is defamation, so it necessarily underlies the alleged conspiracy. Defendants did not move to dismiss the defamation claim against Defendant Zamora, and the Court found Defendant Zamora not immune from all statements in the email. Thus, George Hansard's defamation claim proceeds against at least one of the named defendants: Defendant Zamora. *See Cotton*, 187 S.W.3d at 701 ("A party may be liable for conspiracy to commit fraud without being liable for the underlying fraud. A defendant's liability for conspiracy depends on 'participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable."). Defendants contend, however, that the

Hansards fail to allege a defamation conspiracy because the Hansards do not adequately claim the School Board Defendants "were involved in the creation or publication of the email." (Doc. 9 at 19).

The Hansards allege Defendant Zamora conspired with each School Board Defendant to defame George Hansard. (Doc. 12 at 31). "[P]roof of a conspiracy may be, and usually must be made by circumstantial evidence." *Butowsky*, 2019 WL 2518833, at *49 (quoting *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 858 (Tex. 1968)). That said, "'a vital fact may not be proven by unreasonable inferences' or 'by piling inference upon inference.'" *Butowsky*, 2019 WL 2518833, at *49 (quoting *Schlumberger Well Surveying Corp.*, 435 S.W.2d at 858). In this case, the Hansards look to Defendant Zamora copying all School Board Defendants on the email and Defendants' joint denial to withdraw or retract the statements as evidence "Defendants were unified in their plan to send an email and make its statements." (Doc. 12 at 31). The Court finds the Hansards have not alleged enough factual content to allow the Court to draw the reasonable inference that Defendants are liable for civil conspiracy. *Iqbal*, 556 U.S. at 678.

To allege a meeting of the minds, the Hansards must assert "specific intent to agree to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Chapman v. Newrez, LLC*, No. 21-CV-03711, 2023 WL 2247053, at *3 (S.D. Tex. Feb. 27, 2023), *R. & R. adopted*, 2023 WL 2634050 (Mar. 23, 2023). As discussed, the Hansards allege only conclusory allegations devoid of factual support in attempting to show Defendants agreed to send the email. *See Angel v. La Joya Indep. Sch. Dist.*, 717 F. App'x 372, 380 (5th Cir. 2017) (finding conclusory allegations such as "[t]he individual board members and Flores met before the election and decided to take an adverse employment action complained of herein,"

insufficient to state a conspiracy claim). The mere fact that all Defendants were copied on the email does not establish Defendants knew or agreed to send the email.

The Hansards also continue to focus on Defendants' joint response refusing to withdraw the email as evidence of a unified plan to *send* the email.  (Doc. 12 at 31). As the Court discussed, the after-the-fact communication may circumstantially show an agreement among Defendants to act on Defendant Zamora's plan and vote to change banks. (Doc. 12 at 5, 31). Refusing to withdraw the statements after the fact, however, does not show "a preconceived plan" on part of Defendants to "send the email and make its statements."  *Angel*, 717 F. App'x at 379–80; (Doc. 12 at 31). The Court therefore finds the Hansards have failed to allege at least one of the necessary elements for a civil conspiracy claim, and therefore **RECOMMENDS** Defendants Motion to Dismiss the civil conspiracy claim be **GRANTED**. (Doc. 9).

## IV. RECOMMENDATION

Based on the above reasoning, the Court **RECOMMENDS**:

- Defendants' Motion to Dismiss for lack of standing be **DENIED**. (Doc. 9).

- Defendants' Motion to Dismiss for Qualified Immunity from George Hansard's § 1983 claim be **DENIED** as to Defendant Zamora.  (Doc. 9)

- Defendants' Motion to Dismiss for Qualified Immunity from George Hansard's § 1983 claim be **GRANTED** as to the School Board Defendants. (Doc. 9)

- Defendants' Motion to Dismiss for Qualified Immunity from Stacy Hansard's § 1983 claim be **GRANTED** as to the School Board Defendants and Defendant Zamora. (Doc. 9)

- Defendants' Motion to Dismiss the Hansards' § 1983 Civil Conspiracy claim be **DENIED**. (Doc. 9)

- Defendant's Motion to Dismiss as to the Hansards' State-Law Claims under the Texas

Education Act be **GRANTED IN PART** and **DENIED IN PART**. (Doc. 9)

- Defendants' Motion to Dismiss as to the Hansards' Defamation claim against the School Board Defendants be **GRANTED**. (Doc. 9)

- Defendants' Motion to Dismiss as to Stacy Hansards' Intentional Infliction of Emotional Distress claim against Defendants be **GRANTED**. (Doc. 9)

- Defendants' Motion to Dismiss as to the Hansards' State Conspiracy claim be **GRANTED**. (Doc. 9)

SIGNED this 5th day of August, 2024.


DAVID B. FANNIN
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND RIGHT TO APPEAL/OBJECT**

In the event that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation **by certified mail, return receipt requested**. Pursuant to 28 U.S.C. § 636(b), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Court need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the Magistrate Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).